UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ADI RAIBSTEIN PERALTA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1395 c/w 23-3073** |
| **SUPREME OFFSHORE SERVICES, INC., ET AL.** | **SECTION: "P" (4)** |
| | ***Applies to: No. 23-1395 only*** |

## ORDER AND REASONS

Before the Court is the Motion to Remand[1] filed by Plaintiff, Adi Raibstein Peralta. Defendants, Monforte Exploration, LLC ("Monforte") and Supreme Offshore Services, Inc. ("Supreme Offshore"), oppose the motion.[2] Having considered the motion, the memoranda and materials submitted in connection with same, and the applicable law, **IT IS ORDERED** that the Motion to Remand (R. Doc. 8) is **DENIED**.

### I.   BACKGROUND

Plaintiff Adi Raibstein Peralta commenced this action in Louisiana state court, naming Monforte and Supreme Offshore as defendants.[3] According to Peralta, he was performing plug & abandonment ("P&A") work on a drilling platform, known as Ship Shoal 291A, in the Gulf of Mexico ("the Gulf")[4] when inclement weather caused the operations on the platform to be shut down.[5] The crew was then ordered to abandon the platform and return to the vessel on which they

---

[1] R. Doc. 8.
[2] R. Doc. 13 (Monforte); R. Doc. 14 (Supreme Offshore).
[3] *See* R. Doc. 1-2.
[4] On January 20, 2025, President Donald J. Trump issued Executive Order 14172, which, in relevant part, ordered the Secretary of the Interior to "take all appropriate actions to rename as the 'Gulf of America' the U.S. Continental Shelf area bounded on the northeast, north, and northwest by the States of Texas, Louisiana, Mississippi, Alabama and Florida and extending to the seaward boundary with Mexico and Cuba in the area formerly named as the Gulf of Mexico." And on February 7, 2025, Secretary of the Interior Doug Burgam signed Order No. 3423, directing the Board on Geographic Names to immediately rename the "Gulf of Mexico" to the "Gulf of America." To avoid any confusion, the Court uses the former name and "the Gulf" because it is consistent with the title used in the parties' briefing, which was submitted prior to the name change.
[5] *Id.* at pp. 2–3, ¶¶ 6, 9–10.

were being housed, the M/V Warren Thomas.[6] Peralta alleges he was swinging from the platform to the vessel using an oil-covered rope when a wave caught the vessel and pushed it beyond his reach, after which Peralta lost his grip on the rope and fell into the Gulf.[7] Peralta further alleges no life-saving equipment was thrown to him and that he was forced to swim back to the platform, where he had to cling to one of its barnacle-covered legs, while being pounded by waves, before he was able to climb back onto the platform's grating.[8]

In his original Petition for Damages, Peralta alleged Monforte was the owner and operator of the drilling platform, Ship Shoal 291A, and that Supreme Offshore was the operator of the M/V Warren Thomas.[9] Peralta also alleged he was employed by Supreme Offshore as a P&A helper aboard the M/V Warren Thomas and that he was a member of the vessel's crew for all purposes under the Jones Act.[10] His original Petition included four causes of action: (1) a Jones Act negligence claim against Supreme Offshore;[11] (2) a general maritime law unseaworthiness claim against Supreme Offshore;[12] (3) a general maritime law maintenance and cure claim against Supreme Offshore;[13] and (4) a claim under Louisiana Civil Code article 2322 for damage caused by ruin of a building against Monforte.[14]

Prior to removal, Peralta filed a First Amended and Supplemental Petition for Damages.[15] Most notably, Peralta amended the paragraph relating to his employment, now alleging he was employed by a different entity, Supreme Service & Specialty Company, Inc. ("Supreme Service"),

---

[6] *Id.* at p. 3, ¶ 10.
[7] *Id.* at p. 4, ¶ 13.
[8] *Id.* at p. 4, ¶¶ 14–15.
[9] *Id.* at p. 2, ¶¶ 5–6.
[10] *Id.* at p. 3, ¶ 8.
[11] *Id.* at pp. 4–6, ¶¶ 18–23.
[12] *Id.* at p. 6, ¶¶ 24–26.
[13] *Id.* at pp. 6–8, ¶¶ 27–33.
[14] *Id.* at pp. 8–9, ¶¶ 34–36.
[15] *Id.* at pp. 30–33.

as a P&A helper at the time of the incident;[16] and he removed the allegation that he was a member of the M/V Warren Thomas's crew for all purposes under the Jones Act.[17] In addition, Peralta expressly withdrew his Jones Act negligence claim against Supreme Offshore[18] and replaced it with a claim for vessel negligence pursuant to 33 U.S.C. § 905(b).[19]

Monforte, with the consent of Supreme Offshore, then removed Peralta's case to this Court, asserting this Court has subject matter jurisdiction over the action pursuant to 43 U.S.C. § 1349(b)—the provision of the Outer Continental Shelf Lands Act ("OCSLA") that grants the district courts of the United States jurisdiction over cases or controversies arising out of, or in connection with, certain operations on the outer Continental Shelf ("OCS").[20] Peralta moves to remand the action to state court, arguing the requirements for OCSLA jurisdiction are not satisfied here.[21] He alternatively argues that even if the Court finds it has jurisdiction over certain claims under OCSLA, the "saving to suitors" clause of 28 U.S.C. § 1331(1) prohibits the removal of his general maritime law claims against Supreme Offshore, and thus the Court should sever and remand those claims to state court.

On the day Peralta filed the instant motion to remand, he also commenced a second lawsuit related to the incident described herein. The second lawsuit was also initially filed in Louisiana state court, and it names Peralta's employer, Supreme Service, as the sole defendant. Supreme Service removed the action to this Court,[22] and it was thereafter consolidated with this action

---

[16] *Id.* at p. 30, ¶ 37.
[17] *Compare id.* at p. 3, ¶ 8 (containing the allegation that Peralta was a member of the crew of the vessel for all purposes under the Jones Act), *with id.* at p. 30, ¶ 37 (amending paragraph 8 of the original petition and containing no such allegation).
[18] *Id.* at p. 30, ¶ 38.
[19] *Id.* at pp. 30–31, ¶¶ 40–45.
[20] R. Doc. 1.
[21] R. Doc. 8.
[22] *See* Civil Action No. 23-3073, R. Doc. 1 (Supreme Service's Notice of Removal).

against Monforte and Supreme Offshore based on the relatedness of the two lawsuits.[23] Peralta filed a motion to remand the second lawsuit as well.[24] This Order and Reasons, however, relates only to Peralta's action against Monforte and Supreme Offshore and his motion to remand filed in connection with that action. The Court will address Peralta's motion to remand his action against Supreme Service in a separate Order and Reasons.

## II.    LAW AND ANALYSIS

### A. Removal and OCSLA Jurisdiction

The right to remove a case from state to federal court derives solely from the statutory grant of jurisdiction in 28 U.S.C. § 1441, which provides that, "[e]xcept as otherwise expressly provided by Act of Congress," a defendant may remove from state court to the proper United States district court "any civil action . . . of which the district courts of the United States have original jurisdiction."[25] The defendant, as the removing party, "bears the burden of showing that federal jurisdiction exists and that removal was proper."[26] In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that "the removal statute should be strictly construed in favor of remand."[27]

Defendants here contend this Court has original jurisdiction over this action pursuant to 43 U.S.C. § 1349(b)(1), which, in relevant part, provides:

> the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals[.]

---

[23] R. Doc. 20.
[24] R. Doc. 17.
[25] 28 U.S.C. § 1441(a).
[26] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).
[27] *Id.* (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

The Fifth Circuit has interpreted this language as straightforward and broad.[28] And because jurisdiction is vested in the district court by this statute, "[a] plaintiff does not need to expressly invoke OCSLA in order for it to apply."[29]

Peralta contends OCSLA jurisdiction does not extend to this action because his alleged injuries did not occur on an OCSLA situs. But, as Monforte points out, the Fifth Circuit has expressly stated the test for OCSLA jurisdiction does not contain a situs requirement.[30] Instead, to determine whether OCSLA jurisdiction is present, courts typically consider "whether (1) the activities that caused the injury constituted an "operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation."[31] Having considered the record in this case, and for the reasons explained below, the Court concludes defendants have satisfied their burden of establishing OCSLA jurisdiction.

Peralta alleges that "at the time of his injuries, [he] was employed by [Supreme Service] in the Supreme P&A division as a plug and abandonment helper."[32] Peralta further alleges that Monforte, at all times material, "owned, operated, and/or controlled the Gulf of Mexico drilling platform Ship Shoal[] 291A [(the "Platform")]."[33] The record also contains a declaration by Benjamin Smith, who declares he is the President of Monforte and has personal knowledge of and is familiar with the Ship Shoal Block 291A platform.[34] The declaration represents that "[t]he Ship

---

[28] *See In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014); *EP Operating Ltd. P'Ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) ("[A] broad reading of the jurisdictional grant of section 1349 is supported by the expansive substantive reach of the OCSLA.").
[29] *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013).
[30] *In re Deepwater Horizon*, 745 F.3d at 164 ("Because federal jurisdiction exists for cases 'arising out of, or in connection with' OCS operations, 43 U.S.C. § 1349, the statute precludes an artificial limit based on situs.")
[31] *Id.* at 163.
[32] R. Doc. 1-2 at p. 30, ¶ 37.
[33] R. Doc. 1-2 at p. 2, ¶ 6.
[34] R. Doc. 1-3, ¶¶ 2–3.

Shoal Block 291A platform is an unmanned, permanently fixed platform located in Ship Shoal Block 291 in the Federal waters of the Ship Shoal Area on the Outer Continental Shelf in the Gulf of Mexico, more than 12 nautical miles from the coast of any contiguous state."[35]  According to Peralta, on the date of the incident, he was assigned to work on the Platform and was performing the duties of a P&A helper.[36]  He alleges that after approximately two hours of work on the Platform, "all operations were shut down due to inclement weather." [37]  Peralta and other Supreme P&A personnel remained on the Platform for an unspecified amount of time, until eventually the crew was ordered to abandon the Platform and return to the M/V Warren Thomas.[38]  Peralta alleges he was attempting to swing from the Platform to the M/V Warren Thomas using an oil-covered rope, and during his attempt, a wave pushed the vessel beyond his reach, after which Peralta lost his grip on the rope and fell into the Gulf.[39]  Peralta alleges he was then forced to swim away from the vessel and cling to a barnacle-covered leg of the Platform until he was able to climb back onto the Platform's grating.[40]  Peralta seeks damages for the injuries he allegedly sustained as a result of this incident.

The Court concludes the first prong of the two-part OCSLA inquiry is satisfied because Peralta's work as a P&A helper on the Platform constitutes an "operation" conducted on the OCS that involves the "exploration, development, or production" of minerals.[41]  OCSLA does not expressly define the term "operation," but the Fifth Circuit has found that the term contemplates "the doing of some physical act on the OCS."[42]  P&A work qualifies as such.  Moreover, it is

---

[35] R. Doc. 1-3, ¶ 3.
[36] R. Doc. 1-2 at p. 3, ¶ 9.
[37] R. Doc. 1-2 at p. 3, ¶ 10.
[38] R. Doc. 1-2 at p. 3, ¶ 10.
[39] R. Doc. 1-2 at p. 4, ¶ 13.
[40] R. Doc. 1-2 at p. 4, ¶¶ 14–15.
[41] *See* 43 U.S.C. § 1349(b)(1).
[42] *EP Operating Ltd. P'Ship v. Placid Oil Co.*, 26 F.3d 563, 567 (5th Cir. 1994) (citing *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1207 (5th Cir. 1988)).

undisputed that the Platform upon which Peralta was performing the P&A work is located on the OCS.[43] Lastly, the terms "exploration," "development," and "production" are "defined broadly" under OCSLA "to encompass the full range of oil and gas activity from locating mineral resources through the construction, operation, servicing and maintenance of facilities to produce those resources."[44] The Court finds P&A work, which "involves the decommissioning of oil and gas wells,"[45] falls within this wide range of oil and gas activity over which OCSLA jurisdiction applies.[46]

The second part of the two-part inquiry is likewise satisfied. Courts in the Fifth Circuit resolve the question of whether a case "arises out of, or in connection with" the OCS operation by applying a "but-for" test.[47] This test assesses whether there is a "but-for" connection between the OCS operation and the cause of action.[48] Here, Peralta would not have sustained his injuries "but for" the P&A work he was performing on the Platform. Accordingly, the but-for test is satisfied.

This conclusion is consistent with the Fifth Circuit's holding in *Recar v. CNG Producing Company*,[49] which involved similar facts. There, the plaintiff-appellant ("Recar") was assigned by his employer to perform maintenance work on platforms located on the OCS that were owned by the defendant-appellee ("CNG").[50] CNG contracted with the M/V GRADY FAGAN to transport the crew from platform to platform, and Recar and the other crew members ate and slept aboard the vessel.[51] Recar alleged he was swinging from a CNG platform to the vessel when the

---

[43] *See* R. Doc. 1-3, ¶ 3.
[44] *EP Operating Ltd. P'Ship*, 26 F.3d at 568.
[45] *St. Romain v. Indus. Fabrication & Repair Serv., Inc.*, 203 F.3d 376, 378 (5th Cir. 2000).
[46] In particular, the term "production" is broadly defined under OCSLA as "those activities which take place after the successful completion of any means for the removal of minerals . . . ." 43 U.S.C. § 1331(m).
[47] *E.g., In re Deepwater Horizon*, 745 F.3d 157, 163–64 (5th Cir. 2014).
[48] *Id.* at 163 ("Even though one can hypothesize a 'mere connection' between the cause of action and the OCS operation too remote to establish federal jurisdiction, this court deems § 1349 to require only a 'but-for' connection.").
[49] 853 F.2d 367 (5th Cir. 1988).
[50] *Id.* at 368.
[51] *Id.*

rope broke, causing Recar to fall to the deck of the vessel and injure his neck.[52] The Fifth Circuit found that Recar's work maintaining the production platform furthered mineral development on the OCS.[53] And applying the but-for test, the court concluded "Recar would not have been injured 'but for' the maintenance work he was performing and supervising on the platform."[54] Thus, the Fifth Circuit ultimately held the district court had original jurisdiction over Recar's action pursuant to OCSLA's jurisdictional provision, 43 U.S.C. § 1349(b)(1).

Accordingly, for all the foregoing reasons, this Court finds OCSLA grants this Court with original jurisdiction over Peralta's claims against Monforte and Supreme Offshore.

### B. The "Saving to Suitors" Clause

Peralta nevertheless argues that even if OCSLA jurisdiction is applicable to the instant matter, his claims arising under maritime law are nonremovable pursuant to the saving to suitors clause of 28 U.S.C. § 1333(1). While Peralta is correct that the saving to suitors clause generally precludes the removal of maritime claims when the basis for jurisdiction is the court's admiralty or maritime jurisdiction, the Fifth Circuit has emphasized that the saving to suitors clause does not prohibit the removal of maritime claims when there exists some other independent basis for federal jurisdiction.[55] Here, OCSLA jurisdiction provides that alternative basis.[56] Thus, the Court finds Peralta's maritime claims are removable.

Peralta alternatively argues that even if this Court exercises jurisdiction over certain of his claims under OCSLA, his claims arising under general maritime law should be severed from this

---

[52] *Id.*
[53] *Id.* at 369.
[54] *Id.*
[55] *See Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 220 (5th Cir. 2013) (explaining that the saving to suitors clause does not limit the right of defendants to remove actions governed by maritime law to federal court where there exists some basis for jurisdiction other than admiralty).
[56] *See id.* ("[W]e have recognized that OCSLA provides 'a basis for federal jurisdiction other than admiralty,' which may permit removal even when maritime law provides the substantive rule of decision.").

action and remanded to state court. Peralta's argument stems from 28 U.S.C. § 1441(c). Under that portion of the removal statute, a civil action that includes a claim arising under federal law and "a claim that has been made nonremovable by statute" may be removed to federal court if the action would have been removable absent the latter claim.[57] The statute directs that, after removal of such action, "the district court shall sever from the action all claims [made nonremovable by statute] and shall remand the severed claims to the State court from which the action was removed."[58] Peralta argues the saving to suitors clause renders his maritime claims nonremovable by statute. But, as discussed above, the saving to suitors clause only precludes removal when the basis for the Court's jurisdiction is admiralty or maritime jurisdiction. Because the basis for the Court's jurisdiction in this case comes from OCSLA, the saving to suitors clause does not serve as a statutory bar to removal. Accordingly, § 1441(c) is inapplicable here.

Peralta cites to *Landerman v. Tarpon Operating and Development, L.L.C.*[59] as support for his argument, but this Court disagrees that *Landerman* provides any. The plaintiff in *Landerman* initially filed suit in state court, asserting claims under the Jones Act and general maritime law, and in the alternative under OCSLA, the Longshore and Harbor Workers' Compensation Act, and the general negligence laws of Louisiana.[60] The defendants removed the action to federal court, and the plaintiff filed a motion to remand, arguing the district court did not have removal jurisdiction over the case because cases brought in state court under the general maritime law are nonremovable.[61] Citing Fifth Circuit precedent, the *Landerman* court explained,

> District courts have original federal question jurisdiction of cases brought under OCSLA, and hence such cases can be removed to federal court under § 1441. . . . *This is true regardless of whether* federal, state, or *maritime law provides the*

---

[57] 28 U.S.C. § 1441(c)(1).
[58] 28 U.S.C. § 1441(c)(2).
[59] 19 F. Supp. 3d 678 (E.D. La. 2014).
[60] *Id.* at 681.
[61] *Id.* at 681–82.

9

> *substantive rule of decision in the case*, and regardless of the citizenship of the parties. . . . Thus, if the Court has jurisdiction over this case under OCSLA, removal was unquestionably proper.[62]

The *Landerman* court ultimately concluded it had OCSLA jurisdiction over the plaintiff's claims and, thus, that the lawsuit was removable.[63] But recognizing that 28 U.S.C. § 1445(a) prohibits the removal of Jones Act claims to federal court,[64] the *Landerman* court, in accordance with the mandate set forth in § 1441(c)(2), severed plaintiff's Jones Act claim from the rest of the action and remanded the Jones Act claim, only, to state court.[65] The court otherwise denied plaintiff's motion to remand.[66]

*Landerman* therefore does not support Peralta's argument that his general maritime law claims should be severed from this action and remanded to state court pursuant to 28 U.S.C. § 1441(c). To the contrary, the *Landerman* court, like this Court, found it had jurisdiction over the plaintiff's case under OCSLA. Thus, the *Landerman* court concluded the plaintiff's maritime claims were properly removed, and the only claim subject to remand pursuant to § 1441(c) was the plaintiff's Jones Act claim.

For all these reasons, the Court rejects Peralta's alternative arguments that his claims arising under general maritime law are nonremovable and should be severed from this action and remanded to state court.

---

[62] *Id.* at 683 (emphasis added).
[63] *Id.* at 684.
[64] *See Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993) ("It is axiomatic that a Jones Act suit may not be removed from state court because [the Jones Act] incorporates the general provisions of the Federal Employers' Liability Act [("FELA")], including 28 U.S.C. § 1445(a), which in turn bars removal."); *see also* 46 U.S.C. § 30104 ("Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section."); 28 U.S.C. § 1445(a) ("A civil action in any State court against a railroad or its receivers or trustees, arising under [FELA], may not be removed to any district court of the United States.").
[65] *Landerman*, 19 F. Supp. 3d at 684–85.
[66] *Id.* at 685.

## III.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff Adi Raibstein Peralta's Motion to Remand (R. Doc. 8) is **DENIED**.

New Orleans, Louisiana, this 19th day of February 2025.

                                            **DARREL JAMES PAPILLION**
                                            **UNITED STATES DISTRICT JUDGE**