## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ADI RAIBSTEIN PERALTA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1395 c/w 23-3073** |
| **SUPREME OFFSHORE SERVICES, INC., ET AL.** | **SECTION: "P" (4)** |
| | *Applies to: No. 23-3073 only* |

## ORDER AND REASONS

Before the Court is the Motion to Remand[1] filed by Plaintiff, Adi Raibstein Peralta. Defendant, Supreme Service & Specialty Company, Inc. ("Supreme Service"), opposes the motion.[2] Having considered the motion, the memoranda and materials submitted in connection with same, and the applicable law, **IT IS ORDERED** that the Motion to Remand (R. Doc. 17) is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

Plaintiff Adi Raibstein Peralta commenced this action in Louisiana state court on May 25, 2023, naming Supreme Service as the sole defendant.[3] According to Peralta, he was performing plug & abandonment ("P&A") work on a drilling platform, known as Ship Shoal 291A, in the Gulf of Mexico ("the Gulf")[4] when inclement weather caused the operations on the platform to be shut down.[5] The crew was then ordered to abandon the platform and return to the vessel on which they

---

[1] R. Doc. 17.
[2] R. Doc. 23.
[3] Civil Action No. 23-3073, R. Doc. 1-2 at p. 1, ¶ 1.
[4] On January 20, 2025, President Donald J. Trump issued Executive Order 14172, which, in relevant part, ordered the Secretary of the Interior to "take all appropriate actions to rename as the 'Gulf of America' the U.S. Continental Shelf area bounded on the northeast, north, and northwest by the States of Texas, Louisiana, Mississippi, Alabama and Florida and extending to the seaward boundary with Mexico and Cuba in the area formerly named as the Gulf of Mexico." And on February 7, 2025, Secretary of the Interior Doug Burgam signed Order No. 3423, directing the Board on Geographic Names to immediately rename the "Gulf of Mexico" to the "Gulf of America." To avoid any confusion, the Court uses the former name and "the Gulf" because it is consistent with the title used in the parties' briefing, which was submitted prior to the name change.
[5] *Id.* at p. 2, ¶¶ 7–8, 10.

were being housed, the M/V Warren Thomas.[6]  Peralta alleges he was swinging from the platform to the vessel using an oil-covered rope when a wave caught the vessel and pushed it beyond his reach, after which Peralta lost his grip on the rope and fell into the Gulf of Mexico.[7]  Peralta further alleges no life-saving equipment was thrown to him and that he was forced to swim back to the platform, where he had to cling to one of its barnacle-covered legs, while being pounded by waves, before he was able to climb back onto the platform's grating.[8]

Peralta alleges he was employed by Supreme Service as a P&A helper aboard the M/V Warren Thomas at the time of his injuries.[9]  In his Petition, he states this action is brought "pursuant to the General Maritime Law and the provisions of 46 U.S.C. § 30104, et seq., commonly referred to as the Jones Act, . . . for the injuries sustained by [him] in the course of his employment as a seaman."[10]  His Petition contains three causes of action: (1) a Jones Act negligence claim;[11] (2) a general maritime law unseaworthiness claim;[12] and (3) a general maritime law negligence claim, wherein he also alleges he is entitled to maintenance and cure.[13]

Supreme Service removed the case to this Court, asserting that removal is proper because this Court has subject matter jurisdiction over the action pursuant to 43 U.S.C. § 1349(b)—the provision of the Outer Continental Shelf Lands Act ("OCSLA") that grants the district courts of the United States jurisdiction over cases or controversies arising out of, or in connection with, certain operations on the outer Continental Shelf ("OCS").[14]  Supreme Service further alleged that

---

[6] *Id.* at p. 2, ¶ 10.
[7] *Id.* at p. 3, ¶¶ 11–13.
[8] *Id.* at p. 3, ¶¶ 14–15.
[9] *Id.* at p. 2, ¶ 5.
[10] *Id.* at p. 1, ¶ 3.
[11] *Id.* at pp. 4–5, ¶¶ 18–22.
[12] *Id.* at p. 5, ¶¶ 23–25.
[13] *Id.* at pp. 5–6, ¶¶ 26–29.
[14] Civil Action No. 23-3073, R. Doc. 1.

Peralta's Jones Act claim was fraudulently pleaded and, thus, does not serve as a bar to removal.[15] Peralta moves to remand, arguing Supreme Services has failed to meet its burden in proving that his Jones Act claim is fraudulently pleaded or that OCSLA jurisdiction applies here. Peralta further argues his general maritime law claims are nonremovable by virtue of the "saving to suitors" clause of 28 U.S.C. § 1333(1).

      The Court notes that prior to instituting this action against Supreme Service (the "second action"), Peralta had previously filed an action, arising out of the same incident, against two other defendants (the "first action"). The two defendants named in the first action are Monforte Exploration, LLC ("Monforte"), as the alleged owner of the platform, and Supreme Offshore Services, Inc. ("Supreme Offshore"), as the alleged operator of the vessel. Peralta asserts claims against Monforte and Supreme Offshore under the Longshore Harbor Worker's Compensation Act, general maritime law, and Louisiana tort law.[16] Peralta's first action was also filed in state court originally but subsequently removed to this Court by the defendants.[17] Peralta filed a motion to remand the first action to state court on the same day he commenced the second action against Supreme Service in state court.[18] While the motion to remand the first action was pending, Supreme Service removed the second action to this Court,[19] and the two actions were consolidated based on their relatedness.[20] Peralta then filed the instant motion to remand the second action to state court as well.[21] The Court addresses the two motions to remand via separate Order and Reasons. This Order and Reasons relates only to Peralta's motion to remand the second action, i.e., his action against Supreme Service.

---

[15] *Id.*
[16] R. Doc. 1-2.
[17] *See* R. Doc. 1.
[18] R. Doc. 8.
[19] Civil Action No. 23-3073, R. Doc. 1.
[20] R. Doc. 20.
[21] R. Doc. 17.

## II.    LAW AND ANALYSIS

### A.  Removal and OCSLA Jurisdiction

The right to remove a case from state to federal court derives solely from the statutory grant of jurisdiction in 28 U.S.C. § 1441, which provides that, "[e]xcept as otherwise expressly provided by Act of Congress," a defendant may remove from state court to the proper United States district court "any civil action . . . of which the district courts of the United States have original jurisdiction."[22]  The defendant, as the removing party, "bears the burden of showing that federal jurisdiction exists and that removal was proper."[23]  In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that "the removal statute should be strictly construed in favor of remand."[24]

Supreme Service contends this Court has original jurisdiction over this action pursuant to 43 U.S.C. § 1349(b)(1), which, in relevant part, provides:

> the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals[.]

The Fifth Circuit has interpreted this language as straightforward and broad.[25]  And because jurisdiction is vested in the district court by this statute, "[a] plaintiff does not need to expressly invoke OCSLA in order for it to apply."[26]

---

[22] 28 U.S.C. § 1441(a).
[23] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).
[24] *Id.* (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).
[25] *See In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014); *EP Operating Ltd. P'Ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994) ("[A] broad reading of the jurisdictional grant of section 1349 is supported by the expansive substantive reach of the OCSLA.").
[26] *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013).

Peralta contends OCSLA jurisdiction does not extend to this action because his alleged injuries did not occur on an OCSLA situs.  But the Fifth Circuit has expressly stated the test for OCSLA jurisdiction does not contain a situs requirement.[27]  Instead, to determine whether OCSLA jurisdiction is present, courts typically consider "whether (1) the activities that caused the injury constituted an "operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation."[28] Having considered the record in this case, and for the reasons explained below, the Court concludes Supreme Service has satisfied its burden of establishing OCSLA jurisdiction.

Peralta alleges that "at the time of his injuries, [he] was employed by [Supreme Service] in the Supreme P&A division as a plug and abandonment helper."[29]  Peralta further alleges that at the time of the incident, "the Gulf of Mexico drilling platform Ship Shoal[] 291A [(the "Platform")]" was in the process of being plugged and abandoned.[30]  The Declaration attached to Supreme Service's Notice of Removal establishes that the Platform was located on the OCS.[31] Peralta alleges he was performing his duties as a P&A helper on the date of the incident, but after approximately two hours of work on the Platform, "all operations were shut down due to inclement weather."[32]  According to Peralta, he and other Supreme P&A personnel remained on the Platform for an unspecified amount of time, until eventually the crew was ordered to abandon the Platform and return to the M/V Warren Thomas.[33]  Peralta alleges he was attempting to swing from the Platform to the M/V Warren Thomas using an oil-covered rope, and during his attempt, a wave

---

[27] *In re Deepwater Horizon*, 745 F.3d at 164 ("Because federal jurisdiction exists for cases 'arising out of, or in connection with' OCS operations, 43 U.S.C. § 1349, the statute precludes an artificial limit based on situs.").
[28] *Id.* at 163.
[29] Civil Action No. 23-3073, R. Doc. 1-2 at p. 2, ¶ 5.
[30] *Id.* at p. 2, ¶ 8.
[31] Civil Action No. 23-3073, R. Doc. 1-3 at ¶ 7.
[32] Civil Action No. 23-3073, R. Doc. 1-2 at p. 2, ¶¶ 9–10.
[33] *Id.* at p. 2, ¶ 10.

pushed the vessel beyond his reach, after which Peralta lost his grip on the rope and fell into the Gulf of Mexico.[34]  Peralta alleges he was then forced to swim away from the vessel and cling to a barnacle-covered leg of the Platform until he was able to climb back onto the Platform's grating.[35]  Peralta seeks damages for the injuries he allegedly sustained as a result of this incident.

The Court concludes the first prong of the two-part OCSLA inquiry is satisfied because Peralta's work as a P&A helper on the Platform constitutes an "operation" conducted on the OCS that involves the "exploration, development, or production" of minerals.[36]  OCSLA does not expressly define the term "operation," but the Fifth Circuit has found that the term contemplates "the doing of some physical act on the OCS."[37]  P&A work qualifies as such.  Moreover, it is undisputed that the Platform upon which Peralta was performing the P&A work is located on the OCS.[38]  Lastly, the terms "exploration," "development," and "production" are "defined broadly" under OCSLA "to encompass the full range of oil and gas activity from locating mineral resources through the construction, operation, servicing and maintenance of facilities to produce those resources."[39]  The Court finds P&A work, which "involves the decommissioning of oil and gas wells,"[40] falls within this wide range of oil and gas activity over which OCSLA jurisdiction applies.[41]

---

[34] *Id.* at p. 3, ¶¶ 11–13.

[35] *Id.* at p. 3, ¶¶ 14–15.

[36] *See* 43 U.S.C. § 1349(b)(1) ("[T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals . . . .").

[37] *EP Operating Ltd. P'Ship v. Placid Oil Co.*, 26 F.3d 563, 567 (5th Cir. 1994) (citing *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1207 (5th Cir. 1988)).

[38] Civil Action No. 23-3073, R. Doc. 1-3 at ¶ 7.

[39] *EP Operating Ltd. P'Ship*, 26 F.3d at 568.

[40] *St. Romain v. Indus. Fabrication & Repair Serv., Inc.*, 203 F.3d 376, 378 (5th Cir. 2000).

[41] In particular, the term "production" is broadly defined under OCSLA as "those activities which take place after the successful completion of any means for the removal of minerals . . . ." 43 U.S.C. § 1331(m).

The second part of the two-part inquiry is likewise satisfied. Courts in the Fifth Circuit resolve the question of whether a case "arises out of, or in connection with" the OCS operation by applying a "but-for" test.[42] This test assesses whether there is a "but-for" connection between the OCS operation and the cause of action.[43] Here, Peralta would not have sustained his injuries "but for" the P&A work he was performing on the Platform. Accordingly, the but-for test is satisfied.

This conclusion is consistent with the Fifth Circuit's holding in *Recar v. CNG Producing Company*,[44] which involved similar facts. There, the plaintiff-appellant ("Recar") was assigned by his employer to perform maintenance work on platforms located on the OCS that were owned by the defendant-appellee ("CNG").[45] CNG contracted with the M/V GRADY FAGAN to transport the crew from platform to platform, and Recar and the other crew members ate and slept aboard the vessel.[46] Recar alleged he was swinging from a CNG platform to the vessel when the rope broke, causing Recar to fall to the deck of the vessel and injure his neck.[47] The Fifth Circuit found that Recar's work maintaining the production platform furthered mineral development on the OCS.[48] And applying the but-for test, the court concluded "Recar would not have been injured 'but for' the maintenance work he was performing and supervising on the platform."[49] Thus, the Fifth Circuit ultimately held the district court had original jurisdiction over Recar's action pursuant to OCSLA's jurisdictional provision, 43 U.S.C. § 1349(b)(1).

Accordingly, for all the foregoing reasons, this Court finds OCSLA grants this Court with original jurisdiction over Peralta's claims against Supreme Service.

---

[42] *E.g., In re Deepwater Horizon*, 745 F.3d 157, 163–64 (5th Cir. 2014).
[43] *Id.* at 163 ("Even though one can hypothesize a 'mere connection' between the cause of action and the OCS operation too remote to establish federal jurisdiction, this court deems § 1349 to require only a 'but-for' connection.").
[44] 853 F.2d 367 (5th Cir. 1988).
[45] *Id.* at 368.
[46] *Id.*
[47] *Id.*
[48] *Id.* at 369.
[49] *Id.*

### B.  The "Saving to Suitors" Clause

Peralta nevertheless argues that his claims arising under maritime law are nonremovable pursuant to the saving to suitors clause of 28 U.S.C. § 1333(1). While Peralta is correct that the saving to suitors clause generally precludes the removal of maritime claims when the basis for jurisdiction is the court's admiralty or maritime jurisdiction, the Fifth Circuit has emphasized that the saving to suitors clause does not prohibit the removal of maritime claims when there exists some other independent basis for federal jurisdiction.[50]  Here, OCSLA jurisdiction provides that alternative basis.[51]  Thus, the Court finds Peralta's claims arising under general maritime law are removable.

### C.  The Jones Act Claim

The Jones Act, 46 U.S.C. § 30104, provides "[a] seaman injured in the course of employment" with the right to bring a civil action at law against his employer.[52]  The parties agree that Jones Act claims filed in state court are generally not removable to federal court.  This is not by virtue of the saving to suitors clause but, rather, because the Jones Act "incorporates by reference the general provisions of the Federal Employers' Liability Act, including 28 U.S.C. § 1445(a), which in turn bars removal."[53]  In its Notice of Removal, Supreme Service alleges that Peralta's Jones Act claim was fraudulently pleaded to prevent removal of the lawsuit against

---

[50] *See Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 220 (5th Cir. 2013) (explaining that the saving to suitors clause does not limit the right of defendants to remove actions governed by maritime law to federal court where there exists some basis for jurisdiction other than admiralty).

[51] *See id.* ("[W]e have recognized that OCSLA provides 'a basis for federal jurisdiction other than admiralty,' which may permit removal even when maritime law provides the substantive rule of decision.").

[52] 46 U.S.C. § 30104(a) ("A seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer.").

[53] *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993) ("It is axiomatic that a Jones Act suit may not be removed from state court because [the Jones Act] incorporates the general provisions of the Federal Employers' Liability Act [("FELA")], including 28 U.S.C. § 1445(a), which in turn bars removal."); *see also* 46 U.S.C. § 30104(a) ("Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section."); 28 U.S.C. § 1445(a) ("A civil action in any State court against a railroad or its receivers or trustees, arising under [FELA], may not be removed to any district court of the United States.").

Supreme Service.  Supreme Service argues Peralta is not a "seaman" within the meaning of the Jones Act, and, thus, Peralta has no reasonable possibility of establishing a Jones Act claim against Supreme Service.  Peralta disagrees.  Peralta argues Supreme Service has failed to meet its heavy burden of showing that there is no possibility that he might establish liability under the Jones Act. Peralta therefore seeks to remand the entire action to state court.

It is generally true that, if a defendant argues that the plaintiff fraudulently pleaded a Jones Act claim to prevent removal, the court may pierce the pleadings to determine whether there is any possibility that the plaintiff would be able to succeed on the merits of that claim.[54] This Court concludes, however, that it is unnecessary to inquire into the merits of Peralta's Jones Act claim, as it does not frustrate the Court's jurisdiction in this case.[55]

Indeed, under 28 U.S.C. § 1441(c)(1), if a civil action includes "a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of [28 U.S.C. § 1331])," and "a claim that has been made nonremovable by statute," the entire action may be removed to federal court if the action would have been removable absent the latter claim.[56]  The statute further directs that, upon removal of such an action, "the district court *shall* sever from the action all claims [made nonremovable by statute] and shall remand the severed claims to the State court from which the action was removed."[57]  Thus, when presented with cases that include a nonremovable Jones Act claim as well as claims that fall within the court's jurisdiction under OCSLA, courts have found that removal is proper pursuant to § 1441(c)(1), but that the mandatory language of

---

[54] *Lackey*, 990 F.2d at 207.
[55] *See Landerman v. Tarpon Operating and Dev., L.L.C.*, 19 F. Supp. 3d 678, 685 (E.D. La. 2014).
[56] 28 U.S.C. § 1441(c)(1).
[57] 28 U.S.C. § 1441(c)(2) (emphasis added).

§ 1441(c)(2) requires the Jones Act claim to be severed from the action and remanded to the state court from which it was removed.[58]

This Court, too, concludes that removal of this action was proper despite the presence of the Jones Act claim.  Accordingly, the Court need not determine whether Peralta's Jones Act claim was fraudulently pleaded.  Instead, the Court must sever and remand the Jones Act claim and may exercise its jurisdiction over Peralta's remaining claims.

## III.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff Adi Raibstein Peralta's Motion to Remand (R. Doc. 17) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff Adi Raibstein Peralta's Jones Act claim against Supreme Service is **SEVERED** from this action and **REMANDED** to the 24th Judicial District Court for the Parish of Jefferson.

New Orleans, Louisiana, this 19th day of February 2025.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

---

[58] *See, e.g., Landerman*, 19 F. Supp. 3d 678 (concluding the court had jurisdiction under OCSLA and denying the motion to remand as to the plaintiff's general maritime law claims, but severing and remanding the plaintiff's Jones Act claim pursuant to 28 U.S.C. § 1441(c)); *Hsieh v. Apache Deepwater, LLC*, No. CV 19-408-BAJ-JW, 2019 WL 9899512 (M.D. La. Aug. 23, 2019) (concluding the court had jurisdiction under OCSLA and denying the motion to remand as to the plaintiff's negligence, strict liability, and general maritime law claims, but severing and remanding the plaintiff's Jones Act claim pursuant to 28 U.S.C. § 1441(c)); *McDonald v. Enermech Mech. Servs., Inc.*, No. 4:23-CV-0126, 2023 WL 4109786 (S.D. Tex. May 30, 2023), *report and recommendation adopted,* No. 4:23-CV-00126, 2023 WL 4110090 (S.D. Tex. June 20, 2023) (concluding the court had jurisdiction under OCSLA and denying the motion to remand as to the plaintiff's general maritime law claims, but severing and remanding the plaintiff's Jones Act claim pursuant to 28 U.S.C. § 1441(c)).